UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITE HERE INTERNATIONAL UNION,<br><br>              Plaintiff,<br><br>     v.<br><br>SKY CHEFS, INC.,<br><br>              Defendant. | No. CV 22-1938 PA (PVCx)<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING HEARING ON PERMANENT INJUNCTION |

       On March 24, 2022, plaintiff Unite Here International Union ("Unite Here" or "Union") filed its Complaint seeking an injunction under the Railway Labor Act ("RLA"), 45 U.S.C. 151-188, against defendant Sky Chefs, Inc. ("Sky Chefs" or "Employer"). Unite Here and Sky Chefs are parties to a Master National Agreement ("MNA") that, among other employees, covers Sky Chefs employees working at Los Angeles International Airport ("LAX"). Unite Here filed an Ex Parte Application for Temporary Restraining Order at the same time it filed its Complaint. Concluding that Unite Here had not satisfied the requirements of Local Rule 7-19, the Court denied the Ex Parte Application without prejudice to Unite Here filing a properly noticed Motion for Preliminary Injunction.

Sky Chefs filed a Motion to Dismiss the action because, in its view, Unite Here's effort to prevent Sky Chefs from modifying the health plan offered to its LAX employees constituted a minor dispute over which the Court would lack jurisdiction under the RLA rather than a major dispute over which it could exercise jurisdiction. See 45 U.S.C. 151a; Consol. Rail Corp. v. Ry. Labor Execs. Ass'n ("Conrail"), 491 U.S. 299, 302, 109 S. Ct. 2477, 105 L. Ed. 2d 250 (1989). On May 26, 2022, the Court granted Sky Chefs Motion to Dismiss. Unite Here appealed and the Ninth Circuit, in a December 18, 2023 Memorandum Disposition, concluded that the parties disagreement constituted a major dispute over which the Court has jurisdiction, reversed this Courts dismissal of the action, and remanded with instructions for this Court to address complex remedial issues that need to be resolved prior to the issuance of any status quo injunction.

Following issuance of the Ninth Circuits Mandate, the Court set a briefing schedule for a hearing on Unite Here's Motion for Permanent Injunction. After continuances to accommodate the parties and the schedules of their witnesses, the Court, on August 19, 2024, conducted an evidentiary hearing pursuant to the Norris-LaGuardia Act ("NLGA"), 29 U.S.C. 107. Having reviewed the declarations and evidence provided by the parties, hearing the testimony of witnesses in open court, and providing opportunity for cross-examination, the Court now makes the following findings of fact and conclusions of law:

1. The MNA between Unite Here and Sky Chefs went into effect on April 7, 2016, and became amendable on December 31, 2018.

2. The MNA governs healthcare plan premium splits between Sky Chefs and its employees. Prior to 2022, Sky Chefs offered employees the option of enrolling in a Consumer-Driven Health Plan ("CDHP") or a Copay Healthcare Plan. The premiums for the CDHP were split between employees and Sky Chefs, so employees would pay 35% of the premium and Sky Chefs would pay the remaining 65%. The Copay Healthcare Plan was split between Sky Chefs and employees so individual employees pay less than 35%, and employees with children, a spouse, or family (i.e., spouse and child(ren)) pay 35% of the premium and Sky Chefs pays 65%.

3. On October 2, 2018, Unite Here gave Sky Chefs notice of its intent to negotiate changes in the MNA pursuant to Section 6 of the RLA in view of the MNAs approaching amendable date of December 31, 2018. One area where Unite Here proposed to bargain for changes was to the healthcare benefit. The Union proposed that, instead of the plans set out in the MNA, the Employer should join a joint-trusteed labor management fund that would provide individual and family benefits to all members of the bargaining unit at no cost or low cost. The parties have been engaged in negotiations about this and other matters since the MNA became amendable, but have yet to reach agreement. Since February of 2019, they have been aided by a mediator from the National Mediation Board ("NMB").

4. As of January 20, 2018, Sky Chefs' operations at LAX are subject to the City of Los Angeles Living Wage Ordinance ("LWO"). See Los Angeles Administrative Code Ch. 1, Art. 11, Div. 10, §§ 10.37-10.37.16. Under the LWO, Sky Chefs is required to compensate employees earning a set minimum base pay for any difference between a set hourly health benefit payment and the hourly value of the healthcare with which they are actually provided. See id. § 10.37.2(a)(3). The minimum wage rate plus the health benefit rate is referred to as the "full cash wage" rate in the City's publications. If an employee chooses to decline employer-provided healthcare coverage, the employee must seek a waiver through the City. See id. § 10.37.15(e).

5. At the time this lawsuit was initiated on March 24, 2022, the LWO's base wage rate was $17.00 per hour and the health benefit rate was $5.67 per hour, yielding a full cash wage rate of $22.67 per hour. As of July 1, 2022, the base wage rate was $18.04 per hour and the health benefit rate was $5.77 per hour, yielding a full cash wage rate of $23.81 per hour. As of July 1, 2023, the lower tier is $18.78 per hour and the health benefit rate is $5.95 per hour, yielding a full cash wage rate of $24.73 per hour. The LWO provides that a collective bargaining agreement that becomes open for negotiation after the LWO's effective date may supersede the ordinance's requirements, but only if the collective bargaining agreement provides a total hourly economic package that is no less than the full cash wage rate required by the LWO. See id. § 10.37.12.

6. Since coming under coverage of the LWO on December 31, 2018, and until on or about April 1, 2022, Sky Chefs met its obligation to provide health benefits or wages in lieu of health benefits by paying employees a supplemental wage that it described as a "market rate adjustment." To calculate the market rate adjustment, Sky Chefs subtracted from the LWO's full cash wage rate the hourly wage rate that Sky Chefs paid the employee, and then subtracted from that amount the cost to Sky Chefs of any benefit option that the employee had selected. For example, if as of July 1, 2021 (when the full cash wage rate was $22.67 per hour), an employee earned $19.00 per hour in wages and purchased healthcare benefits that cost Sky Chefs $2.00 per hour, Sky Chefs would pay the employee $1.67 per hour as the market rate adjustment ($22.67–$19.00–$2.00=$1.67). To take another example, if on the same date an employee earned the base rate of $17.00 per hour and elected no healthcare benefits, then Sky Chefs would pay the employee $5.67 per hour as market rate adjustment ($22.67–$17.00–$0.00=$5.77). Sky Chefs' payment of the market rate adjustment ensured that employees earned the full cash wage rate required by the LWO, taking into account their actual wage rate together with the cost to Sky Chefs of their voluntarily elected benefit choices.

7. On or about October 22, 2021, Sky Chefs provided the Union with its annual benefits letter and notified the Union of the 2022 open enrollment period. The benefits letter stated: "In locations LAX and JFK a new Cigna Co-pay plan will replace the current Cigna plans offered. The rates for these plans will be consistent with the 2022 co-pay plan rates offered in the other [customer service centers ("CSC")]." Unite Here's chief negotiator stated that the benefits letter did not provide him with notice that Sky Chefs intended to force its employees at LAX to participate in a company-sponsored "no cost" plan and end the LWO market rate adjustment. The open enrollment period began on November 1, 2021, and ended on November 19, 2021, for a plan year beginning January 1, 2022.

8. Although Sky Chefs appears to have made references to its intention to adopt a company-sponsored no cost plan for LAX during the parties discussions about a variety of issues in October, November, and February, there is no evidence that Sky Chefs provided

-4-

Unite Here with any concrete proposal, details, or cost data about such a plan, or that Sky Chefs intended to eliminate the market rate adjustment until February 28, 2022. On that day, Roger Twigg ("Twigg"), Sky Chefs Head of Labor Relations for North America, sent to Unite Here's Chuck Hendricks ("Hendricks") an email stating:

> As you are aware, the LA Living Wage ordinance requires the Company to pay Sky Chefs employees a minimum hourly wage plus a supplemental health insurance benefit amount. After much internal discussion and in response to requirements of the ordinance, the Company has made the decision to offer free healthcare to all LAX employees who are covered under the ordinance. Employees will have the opportunity to opt out of the coverage provided they show proof of other coverage and apply through an exemption through the city.

9. Hendricks responded to Twigg the same day requesting information about the new healthcare plan: its eligibility requirements, cost to the company, its plan design, and an explanation of what would happen if the value of the plan were less than the amount required by the law.

10. On March 4, 2022, Twigg forwarded to Hendricks information showing that the total monthly cost to employees for employee-only coverage under what was called the "LAX Copay Plan" would be zero. Sky Chefs stated that the total monthly cost for the employer would be $982.76 per month, which works out to $5.67 per hour over a year consisting of 2080 work hours ($982.76 x 12 2080 = $5.67). The $5.67 hourly rate equaled the health benefit rate under the LWO at the time, meaning that Sky Chefs would no longer pay any market rate adjustment.

11. On March 11, 2022 Hendricks and Twigg held a telephone conference about the matter. Hendricks made clear to Twigg the Unite Heres position that Sky Chefs could not unilaterally implement the healthcare and wage changes it was planning at LAX. Twigg

1  responded that he believed that Sky Chefs could act unilaterally, but that he would discuss it
2  further internally.

3        12.    On March 15, 2022, Hendricks wrote to inquire as to the status of the matter.
4  Twigg responded that he had met the day before with senior leadership, and confirmed Sky
5  Chefs decision to implement the changes unilaterally.  Sky Chefs implemented its LAX
6  Copay Plan and ceased paying the market rate adjustment on April 1, 2022.

7        13.    The LWO has enforcement mechanisms allowing covered employees to seek
8  the differential between the wage required by the LWO without health benefits and the wage
9  with health benefits.  See LWO, § 10.37.6.  The LWO also authorizes the City of Los
10 Angeles to audit employers to verify compliance and order the payment of restitution to
11 employees.  See id.  Through those enforcement mechanisms, the City of Los Angeles has
12 ordered Sky Chefs to pay to the employees $225,390.65 in restitution for 2022.  (See
13 Declaration of Eric Myers, ¶¶ 2-5 & Exhs. A & B, Docket No. 56.)  The City of Los Angeles
14 has initiated a similar audit for 2023.  (See id.)

15       14.    During the evidentiary hearing, Hendricks testified that one of the reasons
16 Unite Here hoped to convince Sky Chefs to participate in a joint-trusteed labor management
17 fund that would provide individual and family benefits to all members of the bargaining unit
18 at no cost or low cost was Unite Here's concern that once the employees began receiving the
19 market rate adjustment as an addition to the minimum hourly rate, it would be next to
20 impossible to redirect those funds to healthcare because the employees would start living off
21 the additional cash as part of their wage.

22       15.    The NLGA evidences congressional intent to limit federal courts from
23 becoming overly involved in labor disputes and issuing injunctive relief unnecessarily.
24 "Even when a violation of a specific mandate of the RLA is shown," courts should
25 "hesitate" to grant an injunction "unless that remedy alone can effectively guard the
26 plaintiff's right."  Aircraft Serv. Int'l Inc. v. Int'l Bhd. of Teamsters Local 117, 779 F.3d
27 1069, 1074 (9th Cir. 2015) (en banc) (quoting Int'l Ass'n of Machinists v. S.B. Street, 367
28 U.S. 740, 772-73, 81 S. Ct. 1784, 1802, 6 L. Ed. 2d 1141 (1961)).

16. The NLGA provides that prior to issuing an injunction, a court must find that (1) unlawful acts have been threatened and will be committed unless restrained, (2) substantial and irreparable harm will occur to the plaintiff, (3) the injury inflicted upon the plaintiff by denial of the injunction will be greater than the injury inflicted upon the defendant by granting the injunction, and (4) there is no adequate remedy at law. See 29 U.S.C. § 107(a)–(d). As the Ninth Circuit explained in its Memorandum Disposition in this case, "a showing of irreparable harm is not needed before an injunction to maintain the status quo may be entered. '[D]istrict courts have subject-matter jurisdiction to enjoin a violation of the status quo pending completion of the required procedures, without the customary showing of irreparable injury.'" Unite Here Int'l Union v. Sky Chefs, Inc., Case No. 22-55608, 2023 WL 8715639, at *2 (9th Cir. Dec. 18, 2023) (quoting Conrail, 491 U.S. at 303, 109 S. Ct. at 2480, 105 L. Ed. 2d 250).

17. An employer subject to the RLA has an obligation under § 6 to maintain the status quo with respect to terms and conditions of employment if such changes would give rise to a major dispute unless and until it has exhausted the RLA's dispute resolution procedures.

18. The Ninth Circuit has held "that a party seeking an injunction under the RLA is not relieved of its obligation to comply with the provisions of Section 8 of the NLGA." Aircraft Serv. Int'l, 779 F.3d at 1077. Section 8 of the NLGA provides:

> No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration.

29 U.S.C. § 108.

19. The Court concludes that § 8 of the NLGA does not prevent the Court from issuing an injunction in this case. Specifically, the Court concludes that in light of Sky Chefs' determination to act unilaterally to establish its LAX Copay Plan and cease paying the market rate adjustment, and the speed with which Sky Chefs acted after first providing details of its plan on February 28, 2022, and implementing the plan on April 1, 2022, Unite Here did make "every reasonable effort" under the circumstances to settle the dispute as required by § 8.

20. The Court further concludes that the remaining applicable factors support the issuance of a permanent injunction. In the present case, the status quo that existed prior to the changes that Sky Chefs made on or about April 1, 2022 was as follows: 1) Sky Chefs offered employees the Copay Plan and CDHP options; 2) Sky Chefs allowed employees to choose for themselves whether and to what extent to participate in either healthcare option (as well as vision and dental coverage options), and 3) Sky Chefs met its requirement under the LWO by paying employees as a supplemental wage payment a sum (the "market rate adjustment") that was calculated by subtracting from the full cash hourly wage rate required by the LWO the actual hourly wage rate that Sky Chefs paid the employee, and from that amount the cost to Sky Chefs of any healthcare option that the employee had voluntarily selected.

21. In fashioning injunctive relief in this instance, the Court will require Sky Chefs to offer its employees at LAX the Copay Plan and CDHP that are substantially identical to those it offered prior to April 1, 2022, and to pay to the market rate adjustment to those employees who choose either no health plan or a health plan with an employer share that when combined with the hourly rate of pay falls below the LWO's "full cash wage." The Court is, however, reluctant to eliminate the LAX Copay Plan adopted by Sky Chefs on April 1, 2022, for any employees who wish to continue their participation in that plan. Sky Chefs may therefore continue to offer the LAX Copay Plan, but may not make participation in the plan mandatory. During the evidentiary hearing, Sky Chef's Tobi Junker testified that Sky Chefs could restore this "status quo" in time for the upcoming open enrollment period in

November 2024 and that any changes could be effective as of January 1, 2025. This injunction will remain in effect unless and until the parties negotiate and approve an alternative resolution or Sky Chefs has exhausted the dispute resolution procedures set forth in the RLA.

22. Unite Here also seeks an award of "back pay" as part of a status quo injunction "'to restore the situation, as nearly as possible, to that which would have occurred but for the violation.'" NLRB v. Ampersand Publ'g, LLC, 43 F. 4th 1233, 1237 (9th Cir. 2022) (quoting Kallman v. NLRB, 640 F.2d 1094, 1103 (9th Cir. 1981)). Although the Court recognizes its discretion to impose a back pay remedy, the Court concludes, in an exercise of the Court's equitable discretion, that a back pay award is not warranted for several reasons.

  A. First, one of the purposes of the LWO is to provide health insurance coverage for covered employees. Sky Chefs acted consistently with that, even if its unilateral decision to do so in a particular manner constituted a "major dispute" under the RLA.

  B. Second, although the modification constitutes a "major dispute," Sky Chefs made similar modifications at other facilities covered by living wage ordinances without objection from Unite Here, so there is no evidence of bad faith or a willful violation of the RLA.

  C. Third, although the details may have been different, Unite Here had proposed, and continues to advocate for, a joint-trusteed labor management fund that would provide individual and family benefits to all members of the bargaining unit at no cost or low cost. Had Sky Chefs agreed to Unite Here's proposal, Unite Here's members would have experienced the same termination of the market rate adjustment that they experienced when Sky Chefs unilaterally imposed its LAX Copay Plan in April 2022. That is, Unite Here was and remains willing to end the market rate adjustment in exchange for a healthcare plan. To award back pay in this situation, where Sky Chefs provided health insurance, would be inequitable.

    D. Fourth, the employees did receive health insurance during the period beginning on April 1, 2022. That health insurance has some value, and to ignore that value and require payment of the market rate adjustment for the period beginning on April 1, 2022, would be inequitable.

    E. Fifth, as Unite Here admitted during the evidentiary hearing, determining the amount of back pay would require additional discovery, necessitate review of voluminous records and demand complex accounting, require the Court to make assumptions about which options employees would have selected during subsequent open enrollment periods, and involve sophisticated actuarial analysis concerning the value of the LAX Copay Plan. The Court's involvement in a back pay award would also potentially supplant an ongoing process through which the City of Los Angeles has already ordered Sky Chefs to pay restitution based on the value that those the LWO tasks with enforcing the LWO have already rendered concerning the value of the healthcare benefits provided by Sky Chefs. The Court is reluctant to interject itself in that process, interfere with those who have the actuarial expertise to make such judgments, and waste the parties' resources by duplicating the LWO's enforcement mechanisms. Indeed, it appears that the LWO's enforcement mechanisms could more quickly determine and provide an appropriate amount of restitution than could the Court.

  23. For all of these reasons, the Court concludes that the equities do not support an award of back pay in these circumstances and, in the exercise of the Court's discretion, the Court declines to include a back pay award as part of its status quo injunction.

  The Court will issue a Judgment and Permanent Injunction consistent with these Findings of Fact and Conclusions of Law.

  IT IS SO ORDERED.

DATED: August 29, 2024

                              _____
                                  District Judge
                         UNITED STATES DISTRICT JUDGE